UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No:  3:19-cr-60-J-39MCR

THOMAS L. PETERSON
_____/

**DEFENDANT'S REPLY TO
UNITED STATES' MEMORANDUM IN OPPOSITION TO THOMAS
PETERSON'S MOTION FOR REDUCTION IN SENTENCE**

COMES NOW the Defendant, Thomas Peterson, by and through his undersigned counsel, and hereby respectfully replies to the United States' Memorandum in Opposition ("Opposition") (Doc 58), and in support thereof, states as follows:

A.  <u>Exhaustion of Administrative Remedies</u>

1. The government recognizes that the First Step Act of 2018 has significantly amended the procedures for motions for compassionate release. "Previously only the BOP could file a motion for compassionate release." Opposition at 8. However, now, inmates are entitled to file such a motion – if 30 days have elapsed since the receipt of a request by the warden of their prison, or if their warden has denied the request. 18 U.S.C. §3582(c)(1)(A).

2. Notwithstanding the clarity of the statute, and the clear intent of Congress to allow inmates to seek redress in federal court (once their request has been rejected or ignored by their own warden), the government seeks to engraft the bureaucracy of the Bureau of Prisons into that statutory process, and asserts that an inmate must pursue all potential <u>appeals</u> – within the BOP – even if the warden has already denied the request.[1]

---

[1] Respectfully, counsel suggests this Court could likely almost take judicial notice that any official within the BOP would <u>not</u> reverse the decision of the warden, who surely knows the inmate,

3. Thus, in the government's view, the bright line denial by the warden that otherwise vests statutory jurisdiction in the trial court – is no longer a bright line. Rather, the inmate would be relegated to pursuing the cumbersome <u>optional</u> internal BOP appeal mechanisms set forth by the government, in note 4, at page 10, of their Opposition.

4. In doing so, the government disregards two key distinctions that defeat their argument. First, the First Step Act does <u>not</u> require exhaustion of <u>all</u> administrative remedies. Rather, it only requires an effort to obtain the approval (or denial) of the <u>warden</u> of the prison in which the inmate is housed, or the failure of that warden to act within 30 days of the request. Under that yardstick, Mr. Peterson has fully complied with the statute.

5. Second, by their own citation to Title 28, of the Code of Federal Regulations §571.63, the government must recognize that any such further appeal, within the BOP, is <u>optional</u>, not mandatory. We quote from the Opposition, at page 10, n. 4 (in which the government quotes from the BOP regulations – <u>not</u> the statute):

> a. When an inmate's request is denied by the Warden, the inmate will receive a written notice and a statement of reasons for the denial. The inmate <u>may</u> appeal the denial through the Administrative Remedy Procedure (28 CFR part 542, subpart B).

(emphasis added).

6. Thus, the government conflates the <u>discretionary</u> "may" language of the C.F.R., and seeks to mischaracterize it as <u>mandatory</u> language, and thus a mandatory requirement for the inmate to pursue internal, bureaucratic, appeals, within the BOP. That the government may not do, not only because of the express language of the C.F.R. (making such appeals within the BOP discretionary),

---

and his or her history, and the status of the conditions at the prison, far better than any supervisor up the bureaucratic chain of command. However, the government asserts an inmate must pursue this exercise in futility, while the underlying health concerns remain at issue, and unresolved.

but because, as noted in the first point, the C.F.R. provisions cannot trump an Act of Congress, and its express language providing the inmate may seek judicial relief, after a denial or failure to act, by their <u>warden</u>.

7. Thus, Mr. Peterson has not "rushed to the courthouse" (Opposition at 10), and need not be relegated to the fruitless "appeal rights" the government asserts. Opposition, at page 10, n. 4. Rather, he has come to the courthouse precisely when the First Step Act permitted him to do so.

B. <u>Health and Medical Considerations</u>

8. As expected, the government hastens to defend the Bureau of Prisons and its "action plan to minimize the risk of COVID-19 transmission into and within its facilities." (Opposition at 4-5).

9. Every prison and every nursing home in America has "action plans." That has not keep out, and will not keep out, the incredibly contagious COVID-19 from being the significant risk that everyone knows it is, from the CDC down to local health officials.

10. That is all the more so when someone suffers co-morbidity factors, such as those suffered by Mr. Peterson.

11. While recognizing that Mr. Peterson suffers from HIV and hyperthyroidism, the government denigrates any legitimate concerns about those serious health conditions.

12. While recognizing that "HIV is a serious illness that, if not treated, can result in death" (Opposition at 13), the government asserts there is no proof that Mr. Peterson is not receiving "proper treatment for his condition." However, even if he <u>is</u> receiving proper treatment, that does not change the fact that this health condition makes him more susceptible to the coronavirus, which, of course, in combination with his HIV and hyperthyroidism, puts him at a far greater risk than the general population.

C.  3553(a) Factors

13.  Obviously, the government was well-aware of Mr. Peterson's prior prison sentence, when they recruited him to cooperate with multiple drug investigations. They did so in July of 2018. (Opposition at 2). The government continued to use Mr. Peterson until at least February of 2019 – a period of 8 months. Clearly, if he was the danger the government purports him to be in their Opposition, they would not have done so.

14.  Respectfully, it is not fair for the government to refer to Mr. Peterson as a "dangerous figure" (Opposition at 17) now, when they are opposing his fair compassionate release request, based on sound medical reasons, when they clearly used that "dangerous figure" for several months, to help them with their drug investigations.

15.  Moreover, Mr. Peterson apologized for his relapse and has worked incredibly diligently ever since, to demonstrate he is an asset to the community, and to law enforcement, and not a liability. As the Court will recall, at the time of sentencing, the government diligently reported on at least a half-dozen areas of important cooperation.

WHEREFORE it is respectfully requested that Mr. Peterson's Motion for Reduction of Sentence be granted.

Respectfully submitted,

**FALLGATTER CATLIN & VARON, P.A.**

 /s/ Curtis S. Fallgatter
Curtis S. Fallgatter, Esq.
Florida Bar No: 0213225
200 East Forsyth Street
Jacksonville, Florida 32202
(904) 353-5800 Telephone
(904) 353-5801 Facsimile
fallgatterlaw@fallgatterlaw.com Email
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by email to: Michael Coolican, Esq., Assistant U.S. Attorney, by email (michael.coolican@usdoj.gov), this 21st day of September, 2020.

                                              /s/ Curtis S. Fallgatter
                                              ATTORNEY

99375